**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| WOODFIN SUITE HOTELS, LLC, | No. C 07-1719 SBA |
| | Related Case No. C 06-1254 SBA |
| Plaintiff, | |
| | **ORDER** |
| v. | |
| | [Docket No. 17] |
| CITY OF EMERYVILLE, | |
| Defendant. | |

Before the Court is plaintiff Woodfin Suite Hotels, LLC's (Woodfin) *ex parte* application for a temporary restraining order and an order to show cause regarding preliminary injunction against defendant City of Emeryville [Docket No. 17]. A hearing was held on the application on May 1, 2007. For the reasons that follow, the application for a temporary restraining order is DENIED. It is further ORDERED that Woodfin show cause why defendant City of Emeryville's motion to dismiss [Docket No. 13] should not be granted on *Younger* abstention principles.

## BACKGROUND

This is the second case filed in federal court by plaintiff Woodfin Suite Hotels, LLC challenging defendant City of Emeryville's ordinance known as "Measure C." This ordinance was passed by the residents of the City of Emeryville on November 8, 2005. Measure C is an ordinance that applies to hotels with more than 50 guestrooms. This includes Woodfin. Among other things, Measure C provides for:

- Minimum compensation of $9 per hour and average minimum compensation of $11 per hour for all employees.
- Annual cost of living increases, calculated by the Consumer Price Index.
- Paid leave at the employees' regular rate of pay for jury duty.
- Protection against discharge for 90 days following a change in ownership of the Hotels or another employer within the Hotels, absent good cause.
- Payment of time-and-a-half for the room cleaners who clean more than 5,000 square feet in an 8 hour work day.
- Maintenance by Hotels of employee compensation records, including names, pay rates, and benefit payments (if the Hotels

    want to credit benefit payments toward total compensation).
- "Reasonable access" to Hotels by city representatives and organizations assisting employees in the hospitality industry for the purpose of monitoring compliance with Measure C and investigating complaints of non-compliance.

According to the City, the ordinance has been in effect since December 6, 2005. According to Woodfin, Measure C's effective date was in excess of a year later, December 26, 2006.

The initial case was file on February 21, 2006, by Woofin and another entity operating a hotel in the City of Emeryville, Pacific Hotel Management, LLC. (C 06-1254 SBA). In that case, the plaintiffs asserted that Measure C is unconstitutional and preempted by state and federal law, in particular the National Labor Relations Act and ERISA. The plaintiffs filed a motion for a preliminary injunction, which the Court denied on August 23, 2006. The Court found that the plaintiffs had not demonstrated a likelihood of success on the merits of their claims. Specifically, the Court held that Measure C was not likely to be preempted by the National Labor Relations Act under either the *Machinists* doctrine or the *Garmon* doctrine. The Court also held that Measure C was not likely preempted by ERISA, or by California laws. Finally, the Court found that the plaintiffs lacked standing to challenge Measure C as unconstitutionally vague, and that the plaintiffs were unlikely to succeed on their Equal Protection challenge to Measure C. Based on the request of the parties, on January 9, 2007, the Court dismissed the action without prejudice pursuant to Rule 41(a)(2).

On September 28, 2006, employees of plaintiff Woodfin filed a complaint in state court alleging that Woodfin is in violation of Measure C. That proceeding is styled *Martinez, et al. v. Woodfin Suite Hotels, LLC*, and is before the Alameda County Superior Court, Case No. RG06291309. As a defense to that action, Woodfin is asserting that Measure C is unconstitutional and unenforceable. Woodfin is also disputing the validity of an "urgency ordinance" passed by the City Council on December 26, 2006, an anti-retaliation provision that forbids the termination of an employee who makes a complaint under Measure C for 90 days, as well as the administrative regulations adopted by the Council on February 6, 2007 to implement Measure C, what the parties refer to as the "implementing regulations."

The Alameda Superior Court issued an injunction prohibiting Woodfin from terminating the

plaintiff employees or placing them on unpaid leave until April 20, 2007, which was subsequently extended to April 26, 2007. On April 27, 2007, Woodfin placed at least some of the employees who filed the complaint on unpaid leave and notified them that they would be terminated on May 2, 2007, purportedly because the employees have failed to provide documentation that they are in this country legally.

On March 27, 2007, plaintiff Woodfin Suite Hotels, LLC filed a new complaint against defendant City of Emeryville (C 07-1719 SBA) in federal court.[1] On April 9, 2007, Woodfin filed an amended complaint. *See* Docket No. 4. This complaint is largely similar to that filed in the first case. Woodfin again alleges that Measure C is unconstitutional and conflicts with federal law. In particular Woodfin alleges that Measure C is (1) unconstitutionally vague; (2) is preempted by federal law; (3) violates Woodfin's rights to due process and equal protection under the Fourteenth Amendment; and (4) compels Woodfin to violate federal laws such as the Internal Revenue Code, the Racketeer Influenced and Corrupt Organizations Act, and the Immigration Reform and Control Act of 1986. The major difference in this second action is Woodfin's assertion that Measure C is preempted by the Immigration Reform and Control Act, and Woodfin's challenge to the implementing regulations. Woodfin contends that enforcement of Measure C will force it to continue the employment of employees found not to have valid Social Security numbers in violation of federal law.

Woodfin's application for a temporary restraining order is premised on its assertion that the City is threatening to revoke its operating license in the immediate future for violating Measure C's anti-retaliations provisions, even applying the provisions to those employees determined not to have valid Social Security numbers, thus forcing it to violate federal law.

### **LEGAL STANDARDS**

Federal Rule of Civil Procedure 65 authorizes a court to enter a preliminary injunction or temporary restraining order. *See* FED. R. CIV. P. 65. The purpose of such injunctive relief is to preserve

---

[1]  Pacific Hotel Management, LLC is not a plaintiff in the second case.

3

the relative positions of the parties until a trial on the merits can be conducted. *See E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 990 (9th Cir. 2006); *LGS Architects, Inc. v. Concordia Homes*, 434 F.3d 1150, 1158 (9th Cir. 2006). A party seeking a preliminary injunction must show either: (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. *Faith Ctr. Church Evangelistic Ministries v. Glover,* 462 F.3d 1194, 1201-02 (9th Cir. 2006). These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. *LGS Architects*, 434 F.3d at 1155; *see also Harper v. Poway Unified Sch. Dist.*, 445 F.3d 1166, 1174 (9th Cir. 2006) (the greater the relative hardship to the moving party, the less probability of success must be shown to support the grant of a preliminary injunction). In addition, the party must do more than merely allege imminent harm sufficient to establish standing, he or she must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief. *Associated Gen. Contractors v. Coalition for Economic Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991), *cert. denied*, 503 U.S. 985 (1992).

Under the sliding scale theory, a party seeking an injunction "need not demonstrate that he will succeed on the merits, but must at least show that his cause presents serious questions of law worthy of litigation." *Topanga Press, Inc. v. City of Los Angeles*, 989 F.2d 1524, 1528 (9th Cir. 1993), *cert. denied*, 511 U.S. 1030 (1994). Additionally, in cases where the public interest may be affected, the court must consider the public interest as a factor in balancing the hardships. *Harris v. Bd. of Supervisors*, 366 F.3d 754, 760 (9th Cir. 2004).

While a preliminary injunction will not be issued without security by the applicant under Federal Rule of Civil Procedure 65(c), a district court has wide discretion in setting the amount of a bond, and the bond amount may be zero if there is no evidence the party will suffer damages from the injunction. *See Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003).

4

**ANALYSIS**

The City of Emeryville opposes the application for a temporary restraining order and invokes the *Younger* abstention doctrine, not only in opposition to the restraining order, but also as grounds for dismissing Woodfin's amended complaint. After reviewing the submissions of the parties, the application for a temporary restraining order must be denied. Absent some demonstration by Woodfin to the contrary, the Court is persuaded that the *Younger* abstention doctrine applies to this matter. If so, then Woodfin's amended complaint will have to be dismissed. Therefore Woodfin is not likely to succeed on the merits of its claims.

The *Younger* doctrine espouses a strong federal policy against federal court interference with pending state judicial proceedings absent extraordinary circumstances. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982); *see also Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 237-38 (1984) ("Under Younger-abstention doctrine, interests of comity and federalism counsel federal courts to abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests"); *Younger v. Harris*, 401 U.S. 37 (1971). "[T]he driving principle behind *Younger* was that in matters of special concern to the states, federal courts should avoid depriving the state courts of the opportunity to adjudicate constitutional issues." *M&A Gabaee v. Community Redevelopment Agency of the City of Los Angeles*, 419 F.3d 1036, 1040 (9th Cir. 2005); *see also Gilbertson v. Albright*, 381 F.3d 965, 975 (9th Cir. 2004) (federal courts should "avoid unwarranted determinations of federal constitutional law").

"Absent 'extraordinary circumstances', abstention in favor of state judicial proceedings is required if the state proceedings (1) are ongoing, (2) implicate important state interests, and (3) provide the plaintiff an adequate opportunity to litigate federal claims." *Hirsh v. Justices of Supreme Court of Cal.*, 67 F.3d 708, 712 (9th Cir.1995) (per curiam); *see also Canatella v. California*, 404 F.3d 1106, 1109-10 (9th Cir. 2005); *San Remo Hotel v. City and County of San Francisco*, 145 F.3d 1095, 1103 (9th Cir. 1998).

If the state court proceedings were undertaken in bad faith or for purposes of harassment, or if

5

some other "extraordinary circumstances" exist, a district court need not abstain under *Younger*. *Younger*, 401 U.S. at 54; *Dubinka v. Judges of Superior Court*, 23 F.3d 218, 225 (9th Cir. 1994). An example of "extraordinary circumstances" is when the statute involved is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Younger*, 401 U.S. at 53-54.

### a. Ongoing State Proceedings

The dispositive issue as to whether there are ongoing state proceedings is whether the state proceedings were underway prior to initiation of the federal proceedings. *See Wiener v. County of San Diego*, 23 F.3d 263, 266 (9th Cir. 1994). The state court proceedings have been ongoing since late September 2006. The federal action was not initiated until March 27, 2007, when Woodfin filed its complaint in this Court. Moreover, state court proceedings "are deemed on-going for purposes of *Younger* abstention until state appellate review is completed." *Gilbertson v. Albright*, 381 F.3d 965, 969 n.4 (9th Cir. 2004).

Woodfin, however, takes the position that the underlying Superior Court action is not the type of "prosecution" contemplated by the *Younger* doctrine, which Woodfin maintains is less applicable in civil rights cases. Woodfin also takes the position that the only prosecution taking place is at the administrative level, to which the *Younger* doctrine does not apply. There are a host of problems with these arguments. First, the *Younger* doctrine is not limited to "prosecutions," either criminal or administrative. Second, the statement that the *Younger* doctrine does not apply to administrative proceedings is flatly incorrect. *Younger* abstention requires that federal courts abstain from hearing claims for injunctive or declaratory relief when the assumption of jurisdiction would interfere with pending state proceedings, whether of a criminal, civil, or even administrative character. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987); *Canatella v. California*, 404 F.3d 1106, 1110 (9th Cir. 2005); *see also Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 627 (1986) (citations omitted) ("We have applied the *Younger* principle to civil proceedings in which important state interests are involved. We have also applied it to state administrative proceedings in which important state

interests are vindicated, so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim").

Third, the argument that the *Younger* doctrine is somehow less applicable in civil rights cases (even assuming that this case is properly characterized as one), ignores cases such as *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 625 (1986), where the Supreme Court held that *Younger* abstention should have been applied in a case where a discharged school teacher brought a sex discrimination claim, and *Kenneally v. Lungren*, 967 F.2d 329, 332-33 (9th Cir. 1992), where *Younger* abstention was found by the Ninth Circuit to apply to a physician's civil rights action challenging the revocation of his license.

Woodfin relies upon *Telco Communications, Inc. v. Carbaugh*, 885 F.2d 1225 (4th Cir. 1989), *cert. denied*, 495 U.S. 904 (1990), to support its contentions. The *Telco* court first noted that if the ongoing state proceeding is "judicial in nature," then *Younger* abstention plainly applies. *Id*. at 1228. The *Telco* court merely held that if state law expressly indicates that an administrative proceeding is not judicial in nature, or if the proceeding lacks "trial-like trappings," then abstention is not required. *Id*. Here there is an ongoing state court proceeding, which certainly qualifies as "judicial in nature," not merely an administrative proceeding. In addition, the *Telco* court did not, as claimed by Woodfin, suggest that "as a general rule, administrative proceedings" are not "judicial." Docket No. 24, at 3.

Furthermore, underlying all of Woodfin's arguments is a faulty premise—that the Court has discretion whether to apply the *Younger* doctrine. This is erroneous. The *Younger* abstention doctrine is mandatory. *See Canatella*, 404 F.3d at 1113; *Beltran v. State of California*, 871 F.2d 777, 782 (9th Cir. 1988).

**b.     Important State Interests**

"The importance of the interest is measured by considering its significance broadly, rather than focusing on the state's interest in the resolution of an individual case." *Baffert v. California Horse Racing Bd.*, 332 F.3d 613, 618 (9th Cir. 2003), *cert. denied*, 540 U.S. 1075 (2003). Here California has an important interest in protecting its judicial process. *Cf. Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 12-

7

14 (1987). If in fact Measure C is problematic, a clear line of Supreme Court and Ninth Circuit cases counsels that the state court should have the first chance to review it, and if appropriate, have the opportunity to narrow its provisions when the federal issue is already before it. *See, e.g., Pennzoil*, 481 U.S. at 11-12; *Hicks v. Miranda*, 422 U.S. 332, 348-52 (1975). When federal courts interpret state statutes in a way that raises federal constitutional questions, a constitutional determination is predicated on a reading of the state statutes that is not binding on the state courts and may be discredited at any time, thus essentially rendering the federal court ruling advisory and the litigation underlying it meaningless; abstention in such situations offers the opportunity for narrowing constructions that might obviate such a constitutional quagmire and intelligently mediate federal constitutional concerns and state interests. *See Pennzoil*, 481 U.S. at 11-12.

In addition to the integrity of its judicial process, California has an important interest in the sort of labor issues that Measure C is concerned with. *See Beltran*, 871 F.2d at 782 (citing *Fresh Int'l Corp. v. Agricultural Labor Relations Bd.*, 805 F.2d 1353, 1360 (9th Cir. 1987) (a state has an important interest in promoting fair employment practices)).

### c. Adequate Opportunity to Raise Federal Claims

For *Younger* abstention to apply, a party "need be accorded only an opportunity to fairly pursue [its] constitutional claims in the ongoing state proceedings." *Juidice v. Vail*, 430 U.S. 327, 337 (1977). "*Younger* requires only the absence of 'procedural bars' to raising a federal claim in the state proceedings." *Communications Telesystems Int'l v. California Pub. Util. Comm'n*, 196 F.3d 1011, 1020 (9th Cir. 1999). The burden rests with the plaintiff to show that it is procedurally barred from raising its federal claims in the state court proceedings. *See Pennzoil*, 481 U.S. at 14. Otherwise, there is a presumption that state courts provide an adequate forum for the adjudication of federal claims. *Id*. at 15.

Woodfin has not shown that it is procedurally barred from raising the constitutional issues it wishes to press against the validity of Measure C and its associated regulations in state court. Instead, Woodfin argues that it would be better for a federal court to determine its constitutional challenges.

8

This position, though, runs squarely counter to the *Younger* doctrine. *Younger* abstention applies even if the constitutionality of the pending proceedings is at the heart of the plaintiff's claim. *Baffert v. California Horse Racing Bd.*, 332 F.3d 613, 619 (9th Cir. 2003). In *Baffert*, the plaintiff claimed that "[t]he only competent figure to rule on Constitutional issues . . . is a Federal Judge." *Id*. The Ninth Circuit rejected this argument, stating that "*Younger* and its progeny repeatedly and explicitly hold to the contrary." *Id*.

There is no procedural bar to Woodfin raising its constitutional claims in state court. It has in fact done so. In its answer in state court, Woodfin asserts a number of affirmative defenses to the City of Emeryville's intervention in that action, including violation of the due process clauses of the Fifth and Fourteenth Amendment (Tenth Affirmative Defense); that the ordinance is unconstitutional (Thirteenth Affirmative Defense); and that the ordinance is entirely pre-empted by federal and state law (Fourteenth Affirmative Defense).

Thus, the three elements of determining the applicability of *Younger* abstention are satisfied in this case. Because it appears that Woodfin's amended complaint will have to be dismissed pursuant to the *Younger* abstention doctrine, it has not shown a likelihood of success on the merits of its claims. Accordingly, its application for a temporary restraining order must be denied.

Even if the *Younger* doctrine were not mandatory in this case, the Court would still be inclined to defer to the state court. Woodfin is challenging a city ordinance. If in fact this ordinance is problematic, the state court should have an opportunity to review it and to narrow its provisions if appropriate, as the federal issues are already before it. *See, e.g., Pennzoil*, 481 U.S. at 11-12; *Hicks*, 422 U.S. at 348-52.

## CONCLUSION

Accordingly, plaintiff Woodfin Suite Hotels, LLC's *ex parte* application for a temporary restraining order and an order to show cause regarding preliminary injunction against defendant City of Emeryville [Docket No. 17], is DENIED.

Given the mandatory nature of the *Younger* abstention doctrine, Woodfin is ORDERED to show cause within twenty days of the entry of this order why its amended complaint should not be dismissed, and that the City of Emeryville's motion to dismiss should not be granted on *Younger* grounds. The City of Emeryville may, if it so chooses, file a response within ten days thereafter.

IT IS SO ORDERED.

May 2, 2007

                                                *Saundra B Armstrong*
Saundra Brown Armstrong
United States District Judge