**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

WOODFIN SUITE HOTELS, LLC,

        Plaintiff,

  v.

CITY OF EMERYVILLE,

        Defendant.

No.  C 07-1719 SBA
Related Case No. C 06-1254 SBA

**ORDER**

[Docket No. 38]

**REQUEST BEFORE THE COURT**

     Before the Court is plaintiff Woodfin Suites Hotels, LLC's Rule 60 Motion to Set Aside, Vacate, or Amend Order Dismissing Case (the "Rule 60 Motion") [Docket No. 38].[1]  On June 7, 2007, the Court dismissed this action with prejudice, abstaining under *Younger v. Harris*, 401 U.S. 37 (1971).  The dismissal was based on the parties' pleadings filed in response to the Court's order to show cause why it should not dismiss under *Younger.*  In addition, defendant's motion to dismiss, based on *Younger* and other grounds, was granted in the alternative for lack of a timely opposition. Woodfin now makes two requests.  First, it requests the Court vacate its dismissal because Woodfin's counsel failed to timely oppose due to a calendering error, which it argues is excusable neglect under Federal Rule of Civil Procedure 60(b)(1).  Second, it requests the Court clarify the dismissal was not based on the merits, to cure alleged confusion in related actions pending in Alameda County Superior Court.

     Having reviewed the pleadings, the Court finds this matter appropriate for resolution without a hearing under Federal Rule of Civil Procedure 78(b).  With regards to Woodfin's first request, the Court DENIES it as late under Rule 60(b)(1).  Woodfin waited *almost seven months* to file its Rule 60 Motion on the grounds it simply mis-calendared the filing date for its opposition to

---

[1]    Also before the Court is defendant the City of Emeryville's Memorandum in Opposition re the Motion [Docket No. 50], which includes a request for sanctions against plaintiff, under Federal Rule of Civil Procedure 11.  Docket No. 50 at 6-8.  This request does not comply with Civil Local Rule 11, so the Court will not address it.

defendant's motion to dismiss. This is an unreasonable delay in filing such a motion. With regards to Woodfin's second request, the Court GRANTS it. Although Woodfin fails to show any actual confusion in the related matters pending in Superior Court, given the request is unopposed and the matter was not litigated on the merits, the Court clarifies its Order to avoid possible confusion.

**BACKGROUND**

This matter unfortunately has a long history, which is as follows.

**I.      Developments prior to this litigation.**

      **A.      2005 Developments**

Woodfin is a Delaware limited liability company, which operates the Woodfin Suites Hotel, with more than 50 rooms, located in the City of Emeryville ("Emeryville"), in Alameda County, California. Docket No. 4 at 1. In April 2005, Woodfin allegedly received a letter from the Social Security Administration (SAA) identifying 244 employees, in its hotels across the country, whose Social Security numbers did not match any in the SSA's data base, known as a "no match" condition. Docket No. 17, attach. 1 at 1:10-13. Woodfin was allegedly concerned, as the Immigration Reform and Control Act of 1986 ("IRCA"), Pub. L. 99-603, 100 Stat 3359 (1986), penalizes the knowing employment of undocumented immigrants. Docket No. 4 ¶ 25, 31-32; Docket No. 17, attach. 1, at 2:10-13. Woodfin claims it lacked the ability to address this issue. Docket No. 17, attach. 1, at 2:13-14.

On or about November 8, 2005, Emeryville voters passed Measure C ("Measure C"), which regulated the wages, hours, benefits, and working conditions for Emeryville hotels with more than 50 rooms. *Id.* ¶¶ 7-8, 16. As a practical mater, it only applied to four Emeryville hotels, all with non-union workforces, and certain of its provisions only applied to Woodfin's hotel. *Id.* ¶ 8; Docket No. 17, attach. 1 at 3:1-3, 3:10-11. Failure to comply with the measure exposes a hotel to possible revocation of its operating permit. *Id.* at 3:3-6.

///
///
///
///

**2006 Developments**

On February 21, 2006, Woodfin and Pacific Hotel Management, LLC[2] ("Pacific") sued Emeryville, in case number 06-01254-SBA (the "1254 case"), demanding declaratory and injunctive relief, alleging Measure C was unconstitutional and/or preempted by state and/or federal law. Docket No. 1-1254 at 1, ¶¶ 3-8.[3] They also claimed it was passed to benefit organized labor. *Id.* ¶ 14. On August 23, 2006, the Court denied plaintiffs' request for a preliminary injunction. Docket No. 67-1254 at 31.

In April 2006, Woodfin allegedly received a letter from the SSA, identifying 21 employees at its Emeryville hotel, with "no match" conditions. Docket 4 ¶ 26; Docket No. 17, attach. 1 at 2:14-15. In September 2006, Woodfin allegedly instructed these employees to correct these "no match" conditions, the reasons therefor, and offered them paid time off to do so. Docket No. 4 ¶ 26; Docket No. 17, attach. 1 at 2:15-22, 3:15-16. Some employees corrected the condition. Docket No. 4 ¶ 27; Docket No. 17, attach. 1 at 2:22-24.

On September 28, 2006 several Woodfin employees, some with outstanding "no match" conditions, sued Woodfin in Alameda County Superior Court alleging Woodfin had violated Measure C. Docket No. 14 at 2:26-28; Docket No. 17, attach. 1 at 2:22-24; Docket No. 36 at 3:7-9. The matter was *Magana et al. v. Woodfin Suite Hotels, LLC*, case number RG06291309 (the "State Action"). Woodfin answered on November 8, 2006, claiming Measure C was unconstitutional, and requested a declaration to that effect. Docket No. 36 at 3:9-10.

In November 2006, twelve Woodfin employees filed administrative complaints with Emeryville alleging Woodfin had violated Measure C. Docket 17, attach. 1 at 3:24-25. On or about December 26, 2006, Emeryville passed an Urgency Ordinance (the "Urgency Ordinance"). Docket No. 4 ¶ 19; Docket No. 17, attach. 1 at 4:8-18. It prevented hotels from terminating employees who filed administrative complaints under Measure C, or placing them on unpaid leave status, for a

///

---

[2]     Pacific is not a party to this matter.

[3]     The complaint, however, did not mention IRCA as preempting Measure C.

period of 90 days after being notified the complaint had been filed, or during the city's investigation, whichever came first.  *Id.*

### C.    2007 Developments

On January 9, 2007, this Court denied Emeryville's motion to dismiss, for judgment on the pleadings, summary judgment, or partial summary judgment, instead granting Woodfin's and Pacific's voluntary motion to dismiss without prejudice, but awarding Emeryville $10,000 in attorney's fees.  *See* Docket No. 88-1254.

On January 23, 2007, Emeryville intervened in the State Action, to argue Measure C was constitutional.  *Id.* at 3:11, 5:1-2; Docket No. 21 at 3:3-5.

On or about February 6, 2007, Emeryville adopted regulations to implement Measure C (the "Implementing Regulations"), which purportedly related back to December 6, 2005.  Docket No. 4 ¶ 20; Docket No. 17, attach. 1 at 5:19-22.  This same day, Emeryville began to investigate the November 2006 administrative complaints.  *Id.* at Docket No. 17, attach. 10 at 26-2.

On March 1, 2007, in the State Action, Woodfin answered Emeryville's complaint, arguing Measure C was unconstitutional and preempted by state and/or federal law.  Docket No. 14 at 3:6-8; Docket No. 21 at 3:5-7.

## II.    Developments during this federal litigation.

### A.    March 2007

On March 27, 2007, Woodfin sued Emeryville, in this matter.  *See* Docket No. 1.  On April 9, 2007, it filed an amended complaint [Docket No. 4], seeking declaratory and injunctive relief and equitable indemnification.  Docket No. 4 at 1, 13-14.  Woodfin again alleged Measure C was passed to benefit organized labor, and was unconstitutional and preempted by state and/or federal law, including the IRCA.  *Id.* ¶¶ 9-10, 12-14, 37-58.  It also claimed it did not provide for the Implementing Regulations, which were being used to retaliate against Woodfin, by denying it an operating permit, for conduct occurring prior to Measure C's effective date.  *Id.* ¶¶ 21, 23-24.  Lastly, Woodfin alleged because the Urgency Ordinance prevented it from firing undocumented workers, it was being forced to violate IRCA.  *Id.* ¶¶ 30-36, 59-61.

///

**B.      April 2007**

On April 26, 2007, the Court related this matter to the 1254 case. *See* Docket No. 12. The next day, April 27, 2007, the Alameda Superior Court allowed a temporary restraining order (TRO) to expire, which had barred Woodfin from terminating the "no match" employees, while Emeryville took 90 days from February 6, 2007, to investigate their administrative complaints. Docket No. 17, attach. 1 at 6:17-24, attach. 10 at 26-2. Woodfin then placed all its "no match" employees on unpaid leave, and notified them they would be terminated, effective May 2, 2007. Docket No. 14 at 3:18-23.

Three days later, on April 30, 2007 three events occurred: (1) Emeryville issued a "notice of violation" of Measure C, to Woodfin. Docket No. 17, attach. 1 at 7:18-20. (2) Woodfin filed in this Court an ex parte application for a TRO barring Emeryville from enforcing Measure C or revoking its operating permit. *See* Docket No. 17. And (3), Emeryville filed in this Court a motion to dismiss [Docket No. 13] on various grounds including abstention under *Younger v. Harris*, 401 U.S. 37 (1971). *See* Docket No. 14 at 23:1-24:16. The Court then set a hearing on the motion for June 12, 2007. *See* Docket No. 13. Under Civil Local Rules 7-3(a) and 7-3(c), oppositions and replies to this motion were due on May 22 and 29, 2007, respectively.

**C.      May 2007**

On May 1, 2007, Emeryville filed an opposition to Woodfin's ex parte application, arguing it had not shown the elements required for a TRO, and this Court should abstain under *Younger*. *See* Docket No. 21. This same day, Woodfin filed a reply arguing *Younger* did not apply to this matter. *See* Docket No. 24. The Court heard oral arguments, this same day. *See* Docket No. 19.

The next day, May 2, 2007, the Court denied Woodfin's application for a TRO. *See* Docket No. 26. Specifically, the Court noted under Federal Rule of Procedure 65, *Faith Center Church Evangelistic Ministries v. Glover*, 462 F.3d 1194, 1201-02 (9th Cir. 2006), and *LGS Architects, Inc. v. Concordia Homes*, 434 F.3d 1150, 1158 (9th Cir. 2006), the Ninth Circuit uses a sliding scale comparing (1) a combination of a party's probable success on the merits and the possibility of irreparable injury, with (2) whether serious questions are raised and if the balance of hardships tips sharply in that party's favor. Docket No. 26 at 3:24-4:11.

The Court found that as no extraordinary circumstances existed, abstention in favor of the State Action was required because it was ongoing, implicated important state interests, and provided Woodfin an adequate opportunity to litigate its federal claims. Docket No. 26 at 5-9 (citing *Hirsh v. Justices of Sup. Ct. of Cal.*, 67 F.3d 708, 712 (9th Cir.1995) (per curiam)). As a result, the Court found Woodfin was unlikely to prevail on the merits, and dismissal would be warranted absent some showing otherwise by Woodfin. Docket No. 26 at 4:4-7. The Court thus issued an Order to Show Cause (OSC) as to why it should not dismiss this matter under *Younger*. *See* Docket No. 26. Woodfin's response was due on May 22, 2007. *See* Docket entry dated 5/2/2007.

On May 22, 2007, Woodfin filed its response to the Court's OSC, but no opposition to Emeryville's motion to dismiss. *See* Docket entries dated 5/22/2007. In its response, Woodfin argued *Younger* did not apply to this matter because: (1) This matter was related to the 1254 case, and as the latter preceded the State Action, this matter also preceded it, Docket No. 27 at 4:14-5:6; (2) Woodfin's dispute in the State Action concerned Measure C's constitutionality, whereas in this matter, it disputed the measure's Urgency Ordinance and the Implementing Regulations, *id.* at 5:14-6:5; and (3) Emeryville had acted in bad faith by aligning itself with "extremist labor front organizations" to unionize Woodfin's property, then harass Woodfin and retaliate against it after it fought Measure C in court, *id.* at 8:4-12:1.[4]

Two days later, on May 24, 2007, Woodfin's counsel filed a Notice of Navy Reserve Duty and Unavailability, stating he would be unavailable from June 1 through 7, 2007. *See* Docket No. 30. On May 29, 2007, seven days late, Woodfin filed its opposition to Emeryville's motion to dismiss. *See* Docket No. 31. The opposition comprised a restatement of Woodfin's response to the Court's OSC, *compare* Docket No. 27 with Docket 31 at 1:21-3:18, 4:14-13:8, 13:23-19:18, along with six new pages of irrelevant argument.[5]

---

[4]     The response also contained a part VI, which claimed *Younger* did not apply to this matter because the Urgency Ordinance and the Implementing Regulations were unconstitutional, *see* Docket No. 27, part VI, but Woodfin failed to legally support this assertion.

[5]     Part V.A and V.B of the opposition restated part VI of the response, *see supra* note 3, but also included a new part V.C, of six pages, addressing preemption, which like the unconstitutionality discussion in parts V.A and V.B, was irrelevant for a *Younger* analysis.

On May 31, 2007, Emeryville filed a reply to Woodfin's response to the Court's OSC. *See* Docket No. 35. This same day, it also filed a motion to strike Woodfin's late-filed opposition. *See* Docket No. 34.

**D.     June 2007**

On June 7, 2007, the Court considered the pleadings filed regarding its OSC and the motion to strike, and finding the matters suitable for disposition without a hearing, found cause to grant Emeryville's motion to dismiss and granted its motion to strike. *See* Docket No. 36. In particular, regarding its OSC, the Court found (1) this matter was distinct from case 1254, and filed after the State Action, *id.* at 3:16-17; (2) Woodfin did not dispute the State Action concerned important state interests, *id.* at 4:20-22; (3) Woodfin failed to show it could not effectively litigate its federal claims in the State Action, *id.* at 4:25-5:5;[6] and (4) Emeryville had not engaged in bad faith conduct, *id.* at 5:22-26. As a result, the Court dismissed Woodfin's action with prejudice on the grounds of abstaining under *Younger*. *Id.* at 1:22-24.

As for the motion to strike, the Court noted Woodfin had not requested an extension to file late, and the Court's standing civil order warns all parties, that a failure to file an opposition will be deemed consent to the granting of a motion. *Id.* at 6:4-15. Thus, the Court also granted Emeryville's motion to dismiss, on the grounds of *Younger* abstention, and on the alternative grounds Woodfin failed to oppose it, *id.* at 6:14-15.

**E.     Post-Dismissal Developments**

About two months after dismissal, on August 27, 2007, the Emeryville City Council held a special meeting regarding the status of a conditional, annual Measure C Hotel Permit for Woodfin. Docket 40, Ex. "6" at 1, 111:20-23. At this meeting, during the public comment portion, special counsel for the city said as this Court had dismissed this matter with prejudice, Woodfin was barred by res judicata from raising its claims in this matter, in other venues. Docket No. 40, Ex. "6" at 1,

---

[6]     Although Woodfin argued its federal dispute in the State Action *differed* from its dispute in this matter, Docket No. 27 at 5:14-6:5, Emeryville correctly noted in its reply, this did not address whether Woodfin could *raise* these allegedly different federal claims in the State Action, Docket No. 35 at part III.C.

7

111:13-14, 111:20-23, 112:18-25.[7] On August 28 and 29, 2007, the council having ruled against Woodfin, Emeryville issued final orders regarding the November 2006 administrative complaints, and disposing of Woodfin's operating permit. Docket 38, attach. 1 at 5:2-6. The following day, in the State Action, Woodfin survived a motion for summary judgment filed by Emeryville. *Id.* at 5:6-13.

On September 17, 2007, Emeryville sued Woodfin in Superior Court to enforce its final orders, in *City of Emeryville v. Woodfin Suites Hotels, LLC*, case number RG07346553. *Id.* at 5:17-20. On October 1, 2007, Woodfin filed in the State Action, a Request for a Writ of Supersedeas or, in the Alternative, a Motion to Stay, to halt Emeryville from enforcing its final orders until Woodfin could file and have a hearing on a petition for writ of mandate challenging these order. *Id.* at 5:14-17. On November 1, 2007, the Superior Court granted the request for a writ, allegedly on the grounds Woodfin would likely prevail against the final orders, and set a hearing for February 27, 2008. *Id.* at 5:23-26. Woodfin then filed a petition for a writ of mandate in Superior Court challenging the final orders, in *Woodfin Suites Hotel, LLC v. City of Emeryville*, case number RG07357953. *Id.* at 5:27-6:2.

On December 27, 2007, Woodfin filed its Points and Authorities in support of its petition for a writ of mandate. *Id.* at 6:2-3. Later that day, it received Emeryville's answer alleging twelve affirmative defenses, including res judicata and collateral estoppel "presumably based on this Court's June 7, 2007 Order dismissing Woodfin's amended complaint." *Id.* at 6:3-6.[8]

A few days later, on December 31, 2007, Woodfin filed a motion to vacate the dismissal, under Federal Rule of Civil Procedure 60(b)(1), on the grounds the late-filed opposition was due to its counsel's excusable neglect, specifically a staff persons' calendaring error. Docket No. 38 at 2:1-4, attach. 1 at 2:15-19. Woodfin also requested the Court clarify it dismissed on the grounds of *Younger* abstention, rather than on the merits, to cure alleged confusion in the related actions

---

[7] The Court notes this exhibit is a ten-page transcript, but rather than provide point cites, Woodfin left it to the Court to find the specific passages on which it apparently bases its arguments.

[8] The Court notes this answer is nine pages long, but again, rather than provide point cites, Woodfin left it to the Court to find the specific portions on which it apparently bases its arguments.

pending in Superior Court.  *Id.* at 2:4-8.  This same day, Woodfin filed an ex parte motion requesting the Court shorten the time to hear these requests [Docket No. 37], which the Court denied on January 14, 2008 [Docket No. 49].  For the reasons discussed below, the Court denies Woodfin's first request but grants its second one.

## LEGAL STANDARD

Federal Rule of Civil Procedure 60 provides a number of grounds for seeking relief from a judgment.  For example, Rule 60(a) allows the Court to correct a clerical error in a judgment or order, without any time limit, unless the Court of Appeals has taken jurisdiction.  Fed. R. Civ. P. 60(a);[9] *Chavez v. Balesh*, 704 F.2d 774, 776 (5th Cir. 1983) (a court may correct at any time, as long as no appeal docketed).  In addition, Rule 60(b) provides, "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:  (1) mistake, inadvertence, surprise, or excusable neglect ...."  *Id.* 60(b), (b)(1); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'hip*, 507 U.S. 380, 393 (1993); *Bateman v. U.S. Postal Service*, 231 F.3d 1220, 1223 (9th Cir. 2000).  Likewise, Rule 60(b)(6), a "catch all" provision, allows the Court to provide the same relief for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6).

Unlike Rule 60(a), however, Rule 60(b) has time limits.  *Id.* 60(c)(1).  Thus, a "motion under Rule 60(b) must be made within a reasonable time--and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding."  *Id.* 60(c)(1).  *Pioneer Inv. Servs. Co.*, 507 U.S. at 393 (discussing rule 60(b)(1)); *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981) (same).

A Rule 60(b)(1) motion filed within the one-year limitation, however, may still be barred under the reasonable-time limitation, depending on relevant circumstances.  *Sorbo v. United Parcel*

---

[9]  Rule 60(a) states:
*(a) Corrections Based on Clerical Mistakes; Oversights and Omissions.* The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record.  The court may do so on motion or on its own, with or without notice.  But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.
Fed. R. Civ. P. 60(a).

*Serv.*, 432 F.3d 1169, 1178 (10th Cir. 2005); *Meadows v. Dominican Republic*, 817 F.2d 517, 820-21 (9th Cir. 1987), *stay denied*, 484 U.S. 951 (1987), *cert denied*, 484 U.S. 976 (1987).  Under Rule 60(b)(1), "What constitutes 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties."  *Ashford*, 657 F.2d at 1055; *Staefa Control-Sys. Inc. v. St. Paul Fire & Marine Ins. Co.*, 875 F.Supp. 656 (N.D. Cal. 1994).

## ANALYSIS

In this case, for the reasons discussed below, the Court denies Woodfin's first request for relief, under Rule 60(b)(1), but grants its second request to clarify it was dismissed without prejudice.

**I.      Woodfin's request under Rule 60(b)(1) is unreasonably late.**

Woodfin's first request for relief falls under Rule 60(b)(1).  Woodfin alleges its counsel's legal assistant mis-calendared the due date for its opposition to Emeryville's motion to dismiss, for May 29, 2007, instead of May 22, 2007.[10]  Docket No. 38, attach. 1 at 2:13-19.  Woodfin requests the Court thus vacate its dismissal, on the ground the legal assistant's act constitutes excusable neglect.  *See* Docket No. 38, at 1:24-2:4; attach. 1, part III.  The Court, however, need not address this argument, as Woodfin's request is unreasonably late under Rule 60(c)(1).  As already noted, under *Meadows v. Dominican Republic*, just because Woodfin filed its request on December 31, 2007, within one year of dismissal on June 7, 2007, it is not necessarily timely.  It must also be filed within a reasonable time, under the factors identified by *Ashford v. Steuart.*  As the following analysis shows, Woodfin did not file its request within a reasonable time, and thus the Court denies it.

**A.      The interest in finality supports denying Woodfin's Rule 60(b)(1) request.**

On February 21, 2006, Woodfin filed suit against Emeryville, in federal court, challenging Measure C, an ordinance created by the popular will of Emeryville's residents, to combat what they apparently viewed, correctly or not, as unfair labor practices by four large hotels in their midst.

---

[10]      Woodfin incorrectly indicates the filing date as May 23, 2007.  Docket No. 38, attach. 1 at 2:19.

During this federal litigation, a number of Woodfin's employees sued it in the State Action. Facing possible dismissal, Woodfin, for reasons unknown, voluntarily dismissed its federal suit, on January 9, 2007. Emeryville then intervened in the State Action. Less than three months after dismissing its first suit, on March 27, 2007, Woodfin sued Emeryville again, in this Court. As a result, this Court had no choice but to abstain under *Younger*. *Woodfin did not appeal*. It did, however, wait almost seven months, until December 31, 2007, before asking the Court to vacate the dismissal, due to its counsel's calendaring error.

As the Ninth Circuit has noted, when a party makes a voluntary, conscious decision not to appeal a matter, correctable on appeal, such "calculated, deliberate choices are not to be relieved from under Fed. R. Civ. P. 60(b)." *Plotkin v. Pac. Tel. and Tel. Co.*, 688 F.2d 1291, 1293 (9th Cir. 1982) (citing *Ackermann v. United States*, 340 U.S. 193, 198 (1950)).

> Allowing motions to vacate pursuant to Rule 60(b) after a deliberate choice has been made not to appeal, would allow litigants to circumvent the appeals process and would undermine greatly the policies supporting finality of judgments. Litigants unsuccessful at trial could forego available appeals and, should subsequent decisions in other cases render their positions viable, they could move to have adverse judgments vacated. The uncertainty resulting from such a rule would be unacceptable.

*Plotkin*, 688 F.2d at 1293.

In this case, the Court notes there are substantial issues at stake in the State Action, including Measure C, the Urgency Ordinance, and the Implementing Regulations. There are also substantial doctrines at issue, including due process, equal protection, federal labor preemption, and immigration policy. And, there are numerous parties involved, within and without the Superior Court, including Woodfin, its employees and owners, Emeryville, its voters and residents, and the other affected hotels and their employees and owners. Many of these parties have substantial property, economic, or employment interests at stake, not to mention that some have had their citizenship status questioned. All of these stakeholders certainly desire the swift and efficient resolution of the State Action, from which this Court properly abstained, under *Younger*'s mandate.

///

In order for all interested parties to achieve finality in the State Action, however, they must rely on the finality of this Court's decision to abstain under *Younger*. Were this Court to disregard *Younger*'s mandate, vacate its dismissal, and proceed to litigate Woodfin's claims, in parallel with the State Act, it would jeopardize the finality of both court's dispositions. This is the type of uncertainty *Plotkin* warns against, whether it results from consecutive or concurrent litigations. Thus, the first *Ashford* factor, the interest in finality, strongly supports denying Woodfin's request to vacate the Court's dismissal of this action.

**B.      The reason for delay supports denying Woodfin's Rule 60(b)(1) request.**

**i.      The stated reason supports denial**

Woodfin claims when its counsel returned from naval reserve duty, on June 12, 2007, he first learned that due to his assistant's calendaring error he had filed Woodfin's opposition to Emeryville's motion to dismiss, seven days late, or on May 29, 2007.[11] Docket No. 38, attach. 1 at 2:13-26. Woodfin claims its counsel then delayed bringing this alleged excusable neglect to the Court's attention for almost seven months, because "[a]fter his return from reserve duty, on June 12, 2007, [he] was 'occupied with both various state court actions pending as to Measure C and handling the administrative action before the CITY as to Measure C.' " Docket No. 38, attach. 1 at 3:1-3. More specifically:

> [I]n addition to Navy duty, Mr. Katz was simultaneously attempting to defend WOODFIN in the administrative procedure wherein the CITY was demanding documents at a fast and furious rate, all the while threatening to pull the operating permit of the hotel. In fact, the CITY issued its administrative orders on the day Mr. Katz returned from Navy duty, June 12, 2007. Since that time, WOODFIN's counsel has been almost completely occupied with defending against the CITY's administrative actions, as well as the various state court actions.

*Id.* at 10:2-8 (decl. citations omitted).

---

[11]      As discussed *infra* in part I.C, this assertion appears questionable, but for now, for the sake of argument, the Court assumes it as true.

///

The Court notes the critical evidence for Woodfin's motion is found in a declaration by Luci DeMaria-Rudy, counsel's assistant. [Docket No. 38, attach. 3.] She clearly declares she mis-calendared the due date for May 29, rather than May 23, 2007.[12] *Id.* ¶ 3. DeMaria-Rudy's declaration comprises five paragraphs of text, of about 300 words, covering less than one page. *See id.* Thus, Woodfin's reason for its delay in filing a request to vacate its dismissal with prejudice, is its counsel was *so occupied to the exclusion of all other matters, it took him almost seven months to file a one-page declaration stating his assistant mis-calendared a due date*

So there is no confusion, the Court wants to make it clear, *short of an incompetency or incapacity due to death, severe illness, imprisonment, mental impairment,* et seq.*, the Court is hard pressed to think of any grounds on which any court would find it would be reasonable for an attorney to* knowingly *delay for* almost seven months *to request relief from a court on the grounds he or she accidentally mis-calendared a due date.* This would be even more so the case, where, as here, a client had suffered a dismissal with prejudice.

As the California Bar Association, of which Woodfin's counsel is a member, cautions, "[a] member shall not intentionally, recklessly, or repeatedly fail to perform legal services with competence." Cal. R. of Prof'l Conduct 3-110(A). "For purposes of this rule, 'competence' in any legal service shall mean to apply the 1) diligence, 2) learning and skill, and 3) mental, emotional, and physical ability reasonably necessary for the performance of such service." *Id.* 3-110(B).

> If a member does not have sufficient learning and skill when the legal service is undertaken, the member may nonetheless perform such services competently by 1) associating with or, where appropriate, professionally consulting another lawyer reasonably believed to be competent, or 2) by acquiring sufficient learning and skill before performance is required.

*Id.* 3-110(C).[13]

---

[12] The due date was in fact, however, May 22, 2007.

[13] Under Civil Local Rule 11-4(a)(1), the California Rules of Professional Conduct are binding on attorneys practicing before this Court.

///

Taking a cue from Rule 3-110, if Woodfin's counsel were truly occupied to the exclusion of all else, when he learned of Woodfin's dismissal with prejudice, he should have either conferred with another attorney at his firm,[14] associated in counsel to address it as quickly as possible, or withdrawn from the matter in favor of counsel with sufficient resources to handle the litigation properly. As he did not, the second *Ashford* factor, the reason for delay, strongly supports denying Woodfin's request to vacate the Court's dismissal of this action.

### ii. The actual reason supports denial.

Woodfin did not wait almost seven months to file this motion, to seek relief on the grounds of excusable neglect due to a calendering error. Nor, did it feel the need to file for relief in August 2007, when one of Emeryville's attorneys told its City Council, during public hearings, that as this Court had dismissed this matter with prejudice, Woodfin was barred by res judicata from litigating its underlying issues in Superior Court. Instead, Woodfin filed this motion when it received Emeryville's answer to its points and authorities for its petition for a writ of mandate, in which Emeryville raised the affirmative defenses of res judicata and collateral estoppel.[15] Woodfin openly admits this, "Woodfin file[d] this instant motion the following day after filing its points and authorities in support of its Writ of Mandate." Docket No. 38, attach. 1 at 10:8-10 (decl. citations omitted). Thus, the real purpose behind Woodfin's Rule 60 Motion was to request the Court clarify its dismissal was not on the merits, and not to vacate its dismissal due to a calendering error. The former request, however, has no connection to the concept of "excusable neglect." Thus, the actual reason behind Woodfin's almost seven-month delay supports denying its Rule 60(b)(1) request.

///

///

---

[14] Woodfin's counsel declares, "I am an attorney with SHEA STOKES, ALC, *attorneys of record* for Woodfin .... I am the *lead* attorney on this matter ...." Docket No. 38, attach. 2 ¶ 1 (emphasis added). Further, this matter's docket shows two attorneys representing Woodfin, Bruno William Katz and Ronald R. Giusso.

[15] The Court notes Emeryville made no attempt in its answer to connect these boilerplate defenses to Woodfin's dismissal in this Court. *See* Docket 43, attach. 1 at 6:8-15.

///

**C.** **The practical ability of the litigant to learn earlier of the grounds relied upon, supports denying Woodfin's Rule 60(b)(1) request.**

Woodfin makes some interesting claims as to when its counsel knew what information. On the one hand, Woodfin argues, had the Court not dismissed this matter on June 7, 2007, nor summarily granted Emeryville's motion to strike this same day, when the Court knew its counsel was unavailable on Naval Reserve duty, he could have responded. Docket No. 38, attach. 1 at 1:25-2:5, 2:23-26. Woodfin further argues counsel could not respond, however, on June 7, 2007, as he had no idea he had missed the opposition filing deadline. *Id.* at 2:5-7, 2:19-25. Thus, Woodfin claims its counsel first learned, on June 12, 2007, when returned from naval reserve duty, that due to his assistant's calendaring error he had filed Woodfin's opposition to Emeryville's motion to dismiss, seven days late, or on May 29, 2007. *Id.* at 2:13-26.

The docket clearly shows, however, Emeryville electronically filed its motion to strike Woodfin's late opposition, on May 31, 2007, *id.* at 2:8-10, *when Woodfin's counsel was still "available,"* as his reserve duty did not begin until June 1, 2007, *see* Docket No. 30. Woodfin fails to explain why counsel did not contact the Court, at that time. *Nor does any of this explain why it took counsel almost seven months to alert the Court to a calendaring error, in the face of his client's dismissal with prejudice.* Thus, the third *Ashford* factor, the practical ability of the litigant to learn earlier of the grounds relied upon, strongly supports denying Woodfin's request to vacate the Court's dismissal of this action.

**D.** **The prejudice to other parties supports denying Woodfin's Rule 60(b)(1) request.**

For the same reasons Emeryville has an interest in the intertwined finalities of this matter and the State Action, as discussed in part I.A, *supra*, it would suffer great prejudice were the Court to re-open this matter, after seven months of undoubtedly complex developments in the State Action, the city's administrative proceedings, and in its executive deliberations. This conclusion applies likewise to all other parties in addition to Woodfin and Emeryville, in the State Action or any related administrative actions. Thus, the fourth *Ashford* factor, the prejudice to other parties, strongly

supports denying Woodfin's request to vacate the Court's dismissal of this action.

### E. The length of delay supports denying Woodfin's Rule 60(b)(1) request.

In addition to listing non-exclusive factors, *Ashford* indicates a court should examine the facts and circumstances surrounding a delay. Examining case law in the Ninth Circuit, the Court finds an almost seven-month delay supports denying Woodfin's Rule 60(b)(1) request. In *Bateman v. U.S. Postal Service*, 231 F.3d 1220 (9th Cir. 2000), where plaintiff's attorney left the country for an extended period, such that defendant was able to file and obtain summary judgment on unopposed grounds, plaintiff's attorney was able to show excusable neglect where he contacted the court within *16 days* of learning of the judgment, and he filed his Rule 60(b)(1) motion within *63 days* of judgment. *Id.* at 1222-23. Likewise in *Laurino v. Syringa General Hospital*, 279 F.3d 750, 752 (9th Cir. 2002) and *TCI Group Life Insurance Plan v. Knoebber*, 244 F.3d 691, 695, 695 n.2 (9th Cir. 2001) (default context), the movants filed Rule 60(b)(1) motions within *27 days* after dismissal and default, respectively.

Likewise, three other cases are instructive in this area. In *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993), the Supreme Court discussed Rule 60(b)(1) and defined the terms "excusable neglect" for all Federal Rules of Civil Procedure using them. *Id.* at 387-95.[16] In *Pioneer*, the court found excusable neglect, where the respondent filed for relief under Federal Rule of Bankruptcy Procedure 9006(b)(1)[17] within *about one week* of realizing he had missed a bankruptcy filing deadline. *Id.* at 382-84, 393-94.

In *Marx v. Loral Corp.*, 87 F.3d 1049 (9th Cir. 1996), a calendaring error case, plaintiffs

---

[16]    The Ninth Circuit adopted *Pioneer*'s "excusable neglect" analysis for Rule 60(b)(1) motions, in *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997), and then adopted it for all Federal Rules of Civil Procedure using the terms "excusable neglect," in *Pincay v. Andrews*, 389 F.3d 853, 855 (9th Cir. 2004) (en banc), *cert. denied*, 544 U.S. 961 (2004).

[17]    The version of Rule 9006(b)(1), at issue in *Pioneer*, stated in part:
    when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion ... on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of *excusable neglect*.
*Pioneer Investment Services Co.*, 507 U.S. at 382 n.2 (emphasis added).
While this rule did not require the motion be filed within a reasonable time, it is unlikely any bankruptcy court would entertain one filed within an "unreasonable" time.

filed their appeal 31 days after judgment, on August 24, because they counted August as having 30, not 31 days, when calendering 30 days for appealing. *Id.* at 1053. Using *Pioneer's* reasoning, the Ninth Circuit found excusable neglect where plaintiffs filed for relief under Federal Rule of Appellate Procedure 4(a)(5),[18] *less than a month* after their late filing. *Id.* at 1053-54.

And, in *Pincay v. Andrews*, 351 F.3d 947 (9th Cir. 2003), *rev'd on reh'g by Pincay v. Andrews*, 389 F.3d 853 (9th Cir. 2004) (en banc), *cert. denied*, 544 U.S. 961 (2004), another calendering error case, a law firm's clerk incorrectly calendared the deadline for a federal appeal for 60 days, instead of 30. *Pincay*, 351 F.3d at 948-49. The Ninth Circuit found excusable neglect, however, where the firm filed for relief *25 days after the filing date* and *only 3 days after realizing the error*, under Federal Rule of Appellate Procedure 4(a)(5).[19] *Pincay*, 351 F.3d at 948-49 (stating facts); *Pincay*, 389 F.3d at 855, 859-60 (stating holding).

Lastly, as if the foregoing were not sufficient, as this Court already noted in part I.A, *supra*, courts must be cautious when Rule 60(b)(1) motions are filed when the time to appeal has run. *See Plotkin v. Pac. Tel. and Tel. Co.*, 688 F.2d 1291, 1293 (9th Cir. 1982). Distilling from all the foregoing cases, the Court finds motions filed under Rule 60(b)(1), claiming excusable neglect due to a calendaring error, should *tend* to fall within the outer ambit of Federal Rule of Appellate Procedure 4(a)(5)(A), which requires a motion for an extension to file a notice of appeal be brought within 30 days of the time to file an appeal, in that case.[20] Fed. R. App. P. 4(a)(5)(A). Here, the

---

[18] The version of Rule 4(a)(5), at issue in *Marx*, stated in part, "[t]he district court, upon a showing of *excusable neglect* or good cause, may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by this Rule 4(a)." *Reynolds v. Wagner*, 55 F.3d 1426, 1428 (9th Cir. 1995) (emphasis added), *cert denied*, 516 U.S. 932, *superseded by*, 121 F.3d 716 (9th Cir. 1997) (unpublished), cited in *Marx*, 87 F.3d at 1054. While this rule specifically required the appellant to file within 30 days of the appeal deadline, the Court nonetheless finds the appellant's alacrity instructive.

[19] The version of Rule 4(a)(5), at issue in *Pincay*, stated in part, "[t]he district court may extend the time to file a notice of appeal if: (i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and (ii) ... that party shows *excusable neglect* or good cause." *Pincay*, 389 F.3d at 859 (emphasis added). While this rule specifically required the appellant to file within 30 days of the appeal deadline, the Court nonetheless finds the appellant's alacrity instructive.

[20] The cases discussed in this part all involved requests filed within this time, or very close to it. The Court, however, does *not* hold that a Rule 60(b)(1) motion *must* be filed prior to the time allowed for filing a motion for an extension to file a notice of appeal under Federal Rule of

time to file a notice of appeal, would have been 30 days.  *Id.* 4(a)(1)(A).  Thus, had Woodfin filed its Rule 60(b)(1) request within 60 days of dismissal, the Court might be more inclined to grant it. Under these circumstances, however, the delay of almost seven months supports denying Woodfin's request to vacate the Court's dismissal of this action.

### F.  Conclusion

Under *Ashford*, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, the prejudice to other parties, and the length of the delay, the Court finds Woodfin's Rule 60(b)(1) motion is unreasonably late, and so denies it.

## II.  Woodfin had a *Younger* determination on the merits.

Before addressing Woodfin's second request, the Court quickly addresses Woodfin's contention it was defaulted or somehow deprived of a hearing on the merits of *Younger* abstention or on Emeryville's motion to strike.  Woodfin correctly notes it filed a timely response to the Court's OSC, on May 22, 2007.  Woodfin thus argues it *could* have filed a timely opposition, but for the calendaring error, especially as the two pleadings are similar.  Docket No. 38, attach. 1 at 1:20-25. Woodfin also claims, as it had no hearing on the issue of dismissal, it suffered a default and was thus deprived of its right to adjudicate this matter on the merits.  *Id.* at 2:10-12, 3:11-14.  Woodfin's conclusion is moot and incorrect.

Woodfin's conclusion is moot, because no matter what happened to Woodfin, it did not appeal, and it did not file a timely Rule 60(b)(1) motion.  Thus, the Court cannot consider what did or did not transpire in June 2007.

In addition, however, Woodfin's conclusion is incorrect.  On April 30, 2007, Woodfin filed for a TRO and Emeryville filed for dismissal on grounds including abstention under *Younger*.  The Court set a hearing on the motion for June 12, 2007, making the opposition due on May 22, 2007.

---

Appellate Procedure 4(a)(5)(A).  Rule 60(c)(1) clearly contemplates Rule 60(b)(1) motions may be filed "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).  And, *Ashford* clearly holds the determination of whether a Rule 60(b)(1) motion is filed within a reasonable time, is dependent on facts and circumstances.  *Ashford*, 657 F.2d at 1053.

On May 2, the Court denied the application for a TRO, on the grounds it appeared the Court should abstain under *Younger*. The Court then set an OSC regarding dismissal on this ground, and gave Woodfin until May 22, 2007, to respond. It also gave Emeryville until June 1, 2007 to reply, if necessary. Under Federal Rule of Civil Procedure 78(b), the Court need not hold oral hearings for every motion.[21] It thus did not set a hearing date for the OSC, just a briefing schedule.

On May 22, 2007, Woodfin timely filed a response to the OSC, addressing the *Younger* issue on the merits, but no opposition. On May 29, 2007, Woodfin did file its opposition, which restated its response to the OSC, and included six new pages of irrelevant argument. On May 31, 2007, Emeryville filed a timely reply, along with a motion to strike Woodfin's late opposition. On June 7, 2007, as the parties had filed their pleadings for the OSC, there was no reason for the Court to delay ruling, and *it found it must abstain under Younger*. As such, there was no reason not to grant Emeryville's motion to dismiss *on this same ground*. Thus, at this point, there was no reason not to strike Woodfin's late opposition.

Woodfin's argument that it lost a chance to argue *Younger* on the merits is wrong, as it argued and lost this issue, on the merits, via its response to the OSC. Woodfin's argument that it lost a second chance to argue this point, via its opposition, is wrong, as it its opposition merely repeated the arguments made in its losing response. Further, to the extent Woodfin took advantage of the extra seven days to add more (irrelevant) material to its opposition, it is clear it could not have filed a timely opposition, but for the fact it mis-calendared the filing date. Thus, Woodfin had a *Younger* determination on the merits, and lost nothing in this regard, by having its late opposition struck.

**III.     The Court amends its June 7, 2007 order to state the dismissal was without prejudice.**

Woodfin second request for relief asks the Court to clarify its dismissal was not based on the merits of Woodfin's claims, so as to cure alleged confusion in the actions pending in the Superior Court. Docket 38 at 2:4-8. As evidence, Woodfin points to Emeryville's attorney making the claim in an August 2007 City Council meeting that this Court's dismissal with prejudice operates as res

---

[21]     Rule 78(b) states, "[b]y rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."

19

judicata to bar Woodfin from litigating its claims in other venues.  Woodfin also points to

Emeryville's December 2007 answer filed in response to its points and authorities for its petition for

///

a writ of mandate, in which Emeryville raised twelve affirmative defenses, including res judicata and

collateral estoppel.

The Court notes the evidence does not tend to show any alleged confusion regarding the status of Woodfin's claims in other venues, due to its dismissal with prejudice.  Bare assertions by Emeryville's counsel, in a public forum, do not equate with filed pleadings.  And, in this regard, Emeryville's boilerplate affirmative defenses, which do not even mention or reference this matter, do not demonstrate any confusion by any parties regarding its dismissal.

Nonetheless, the Court abstained from this matter, and did not adjudicate it on its merits, nor intend to suggest as such.  In this regard, Woodfin has alleged the Court should have stayed it or dismissed it without prejudice, rather than dismissed it with prejudice, citing to *Adam v. Hawaii*, 235 F.3d 1160 (9th Cir. 2001), *overruled on other grounds by Green v. City of Tucson*, 255 F.3d 1086 (9th Cir. 2001).  Docket 38, attach. 1 at 6:10-13, 12:5-11.

With regards to the issue of a stay, Woodfin is incorrect, and *Adam* is inapposite.  As the Supreme Court has held, "it has long been established that a federal court has the authority to decline to exercise its jurisdiction when it 'is asked to employ its historic powers as a court of equity,' ..." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706,717 (1996) (quoting *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 120 (1981) (Brennan, J., concurring)); *see Gilbertson v. Albright*, 381 F.3d 965, 975 (9th Cir. 2004).  "By contrast, while we have held that federal courts may stay actions for damages based on abstention principles, we have not held that those principles support the outright dismissal or remand of damages actions." *Quackenbush*, 517 U.S. at 721; *see Gilbertson*, 381 F.3d at 975.  In this case, Woodfin sued for declaratory and injunctive relief and equitable indemnification.  *It did not sue for damages at law*, as the plaintiff in *Adam* did, *Adam*, 235 F.3d at 1163-64.  Thus, the Court was clearly within its discretion to dismiss this matter.

In regards to the issue of Woodfin's involuntary dismissal with prejudice, although Woodfin

fails to show any actual confusion in the related matters pending in Superior Court, given the request

is unopposed and the matter was not litigated on the merits, the Court clarifies its June 7, 2007 order

to avoid possible confusion.

///

## CONCLUSION

The Court GRANTS in part and DENIES in part Woodfin Suites Hotels, LLC's Rule 60

Motion to Set Aside, Vacate, or Amend Order Dismissing Case [Docket No. 38].  Specifically, with

regards to Woodfin's first request, to vacate the June 7, 2007 dismissal, under Rule 60(b)(1), on the

grounds of excusable neglect, the Court DENIES it as unreasonably late.  With regards to Woodfin's

second request that the Court clarify it did not adjudicate this matter on its merits, the Court

GRANTS it, and amends its Order dated June 7, 2007 [Docket No. 36], such that the first sentence

of line 19 of page 6 should now read, "Plaintiff Woodfin's complaint is dismissed without

prejudice."

IT IS SO ORDERED.

March 13, 2008

_Saundra B Armstrong_
Saundra Brown Armstrong
United States District Judge